# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| JOHN W. JACKSON and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| -against- | ) ) ) | |
| GARY KING, in his Official Capacity as Attorney General of the State of New Mexico; and BILL HUBBARD, in his Official Capacity as Director of the Special Investigations Division of the New Mexico Department of Public Safety, | ) ) ) ) ) ) ) | Case No. 1:12-CV-421 |
| Defendants. | ) ) | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>

NOW COME the Plaintiffs, JOHN W. JACKSON and SECOND AMENDMENT FOUNDATION, INC., by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of their Motion for Preliminary Injunction.

Dated: August 9, 2012

David G. Sigale, Esq. (#6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com
Admitted *pro hac vice*

Respectfully submitted,

Paul M. Kienzle, III., Esq. (#11521 (NE))
SCOTT & KIENZLE, P.A.
P.O. Box 587
Albuquerque, NM 87103
(505) 246-8600
paul@kienzlelaw.com

By: _____ /s/ David G. Sigale _____
David G. Sigale

One of the Attorneys for Plaintiffs

*TABLE OF CONTENTS*

Table of Authorities ………………………………………………………………..……… iii

Preliminary Statement .................................................................................................. 1

Statement of Facts ........................................................................................................ 1

     A.    New Mexico's Ordinance Bans Legal Aliens from Concealable Firearm
           Registration ..................................................................................................1

     B.    The Registration Prohibition's Impact on JACKSON and Similarly-Situated
           New Mexico Residents ............................................................................... 3

Summary of Argument .................................................................................................. 4

Argument ...................................................................................................................... 4

     I.    THE SECOND AMENDMENT APPLIES TO PLAINTIFF JACKSON AND
          THE ORGANIZATIONAL PLAINTIFFS' LEGAL ALIEN MEMBERS …....… 5

     II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE
          OF PRELIMINARY INJUNCTIVE RELIEF....................................... 10

     III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE
          THE HARM  OF THE BAN ON CONCEALABLE FIREARM
          REGISTRATION BY LEGAL ALIENS ............................................... 11

     IV.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS NEW MEXICO'S
          BAN ON CONCEALABLE FIREARM REGISTRATION VIOLATES
          THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS ................. 12

     V.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE
          INJUNCTIVE RELIEF........................................................................ 13

Conclusion ................................................................................................................... 14

## *TABLE OF AUTHORITIES*

<u>Cases</u>

*ACLU v. Johnson*,
 194 F.3d 1149 (10th Cir. 1999) ……………………………………………………… 10

*Awad v. Ziriax*,
 670 F.3d 1111 (10th Cir. 2012) ……………..……………………………………….. 5, 12

*Bridges v. Wixon*,
 326 U.S. 135 (1945) …………………………………………………………………... 7

*Davis v. Mineta*,
 302 F.3d 1104 (10th Cir. 2002) …………………………………………………… 5, 12

*District of Columbia v. Heller*,
 128 S. Ct. 2783 (2008)....................................................................... 9, 10, 11, 13

*Elrod v. Burns*,
 427 U.S. 347 (1976) ………………………………………………………..………….. 10

*Ezell v. City of Chicago*,
 651 F.3d 684 (7th Cir., 2011) …………………………………………………… 9, 11

*Fletcher v. Haas*,
 2012 U.S. Dist. LEXIS 44623 (D. Mass. Mar. 30, 2012) …………………………. 7, 8, 9

*Flood v. Clearone Communication, Inc.*,
 618 F.2d 1110 (10th Cir. 2010) ………………………………………............. 5

*Graham v. Richardson*,
 403 U.S. 365 (1971) ………………………………………………….………… 6, 7

*Kansas Judicial Watch v. Stout*,
 653 F.3d 1230 (10th Cir. 2011)…………………………………..…………… 5, 12

*Kwong Hai Chew v. Colding*,
 344 U.S. 590 (1953) …………………………………………………………….….. 7

*McDonald v. City of Chicago*,
 130 S. Ct. 3020 (2010) ..................................................................... 10, 12

*Pacific Frontier v. Pleasant Grove City*,
 414 F.3d 1221 (10th Cir. 2005) ……………………………………………….. 10, 11

*People v. Bounsari,*
    915 N.Y.S.2d 921 (N.Y. City Ct. 2011) …………………………………………… 7

*Pliego-Gonzalez v. City of Omaha,*
    8:11-CV-335 (D.NE 2011) ………………………………………………………… 9

*Richmond Newspapers v. Virginia,*
    448 U.S. 555 (1980) …………………………………………………………… 12

*Russian Volunteer Fleet v. United States,*
    282 U.S. 481 (1931) …………………………………………………….................... 7

*Takahashi v. Fish & Game Commission,*
    334 U.S. 410 (1948) ………………………….................................................... 7

*United States v. Boffil-Rivera,*
    2008 U.S. Dist. LEXIS 84633 (S.D. Fla. Aug. 12, 2008) …………………… 8

*United States v. Carolene Products Co.,*
    304 U.S. 144 (1938) ……………………………………………….................... 6

*United States v. Flores-Higuera,*
    2011 U.S. Dist. LEXIS 84934 (N.D. Ga. July 6, 2011) ………………………… 8

*United States v. Huitron-Guizar,*
    678 F.3d 1164 (10th Cir. 2012) …………………………………………...… 7, 8

*United States v. Verdugo-Urquidez,*
    494 U.S. 259, 265 (1990) …………………………………………….......... 6, 8

*United States ex rel. Turner v. Williams,*
    194 U.S. 279 (1904) …………………………………………………………… 6

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) …………………………………………………............... 4

*Wong Wing v. United States,*
    163 U.S. 228 (1896) ………………………………………………................... 7

*Yick Wo v. Hopkins,*
    118 U.S. 356 (1886) ……………………………………………...……… 6

*Zadvydas v. Davis,*
    553 U.S. 678 (2001) …………………….................................................... 7

<u>Constitutional Provisions</u>

U.S. Const. amend. II ............................................................................................  *passim*

U.S. Const. amend. XIV………………………………………………………………..  *passim*

<u>Statutes, Rules, and Ordinances</u>

New Mexico Statute Annotated § 29-19-4.A(1)………………………………………..…  *passim*

New Mexico Statute Annotated § 30-1-6.C....................................................................  2

New Mexico Statute Annotated § 30-7-2………….…………….……………………..…...  2

<u>Other Authorities</u>

T. Alexander Aleinikoff, *Semblances of Sovereignty: The Constitution, the State, and American Citizenship* 173 (2002) ……………………………………………………………..  8, 9

Gerald M. Rosberg, *The Protection of Aliens from Discriminatory Treatment by the National Government*, 1977 Sup. Ct. Rev. 275, 337 (1978) ………………………………………  8

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### *PRELIMINARY STATEMENT*

New Mexico Statute NMSA § 29-19-4.A(1), which denies otherwise-qualified legal aliens the ability to register concealable firearms for public carrying, flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms.  Also, because otherwise-qualified United States citizens are not restricted from registering concealable firearms in New Mexico, Plaintiffs' right to equal protection of the law under the Fourteenth Amendment is being violated.  The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are likely to succeed on the merits by the conclusion of this litigation.  The State's law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of New Mexico residents has been and continues to be wrongfully denied the right and ability the full ability to defend their persons from criminal attack.  New Mexico has no valid interest in completely banning legal aliens from registering concealable firearms for public carrying when citizens are not so banned.  Therefore, the balance of interests falls heavily on Plaintiffs' side, and preliminary injunctive relief is warranted and appropriate.

### *STATEMENT OF FACTS*

A.    *New Mexico's Ordinance Bans Legal Aliens from Concealable Firearm Registration*

The State of New Mexico requires that its residents who wish to obtain a concealed carry permit ("CCW") must apply with the New Mexico Department of Public Safety.  The Division of Special Investigations processes all such requests.

However, NMSA § 29-19-4 provides in pertinent part:

29-19-4. Applicant qualifications.

A.      The [Department of Public Safety] shall issue a concealed handgun license to an applicant who:

(1)      Is a citizen of the United States;

. . .

NMSA § 30-7-2 provides in pertinent part:

A. Unlawful carrying of a deadly weapon consists of carrying a concealed loaded firearm or any other type of deadly weapon anywhere, except in the following cases:

(1) in the person's residence or on real property belonging to him as owner, lessee, tenant or licensee;

(2) in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property;

. . .

(5) by a person in possession of a valid concealed handgun license issued to him by the department of public safety pursuant to the provisions of the Concealed Handgun Carry Act [29-19-1 NMSA 1978].

B. Nothing in this section shall be construed to prevent the carrying of any unloaded firearm.

C. Whoever commits unlawful carrying of a deadly weapon is guilty of a petty misdemeanor.

NMSA § 30-1-6.C provides that "A crime is a petty misdemeanor if it is so designated by law or if upon conviction thereof a sentence of imprisonment for six months or less is authorized."

2

These Code sections prohibit JACKSON and all other legal aliens residing in New Mexico from obtaining a concealed carry permit, and from the public concealed carry of firearms for self-defense.

It is unclear what New Mexico's claimed purpose was for enacting this prohibition, which serves solely to discriminate against New Mexico's qualified legal alien population, including JACKSON and members of SAF, though there is no purpose New Mexico can offer that passes constitutional muster.

      B.    *The Registration Prohibition's Impact on JACKSON and Similarly-Situated New Mexico Residents.*

JACKSON has been a permanent resident alien of the United States since on or about November, 2008.  He has lived in New Mexico since arriving in the United States in February, 2007 on a K3 spousal visa.  JACKSON is concerned about his ability to defend himself in the event violence is inflicted upon him.  *See* Declaration of John W. Jackson, attached hereto.

SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington.  SAF's membership includes lawfully admitted aliens residing in New Mexico.  SAF has over 650,000 members and supporters nationwide, including more than 3000 in the State of New Mexico.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms.  SAF litigates this action on behalf of itself and its members, and as such has organizational standing to pursue this action and Motion.  *See* Declaration of Julianne H. Versnel, Director of Operations of SAF, attached hereto.

Every day that passes without relief from New Mexico's registration prohibition, all legal aliens residing in New Mexico who are otherwise qualified to obtain a concealed carry permit, including JACKSON and the members and supporters of Plaintiff SAF, are frustrated in their

ability to carry handguns in a concealed manner for self-defense, and to enjoy their constitutional rights.

But for the criminal enactments challenged in this complaint, JACKSON and the qualified legal alien members of SAF would obtain permits and carry concealable firearms for self-defense, but refrain from doing so for fear of arrest, prosecution, fine and incarceration.

## SUMMARY OF ARGUMENT

New Mexico's prohibition on legal aliens obtaining a concealed carry permit for self-defense, regardless of said legal alien's qualifications to do so, unquestionably violates the constitutional guarantees of keeping arms and equal protection under the laws, as do any other of New Mexico's various ordinances that, regardless of their validity as generally applied, undeniably frustrate constitutionally-secured rights of concealed handgun possession.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief.  Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law. Granting Plaintiffs relief cannot injure Defendants.  And given the degree to which New Mexico's concealed carry permit prohibition threatens the safety of Plaintiffs, the public interest - already favoring the exercise of fundamental rights - is clearly satisfied by immediately enjoining New Mexico's unconstitutional practices.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Similarly, the Tenth Circuit requires for a preliminary injunction that "[t]he moving party must show (1) a substantial likelihood that it will ultimately succeed on the merits of its suit; (2) it is likely to be irreparably injured without an injunction; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and, (4) the injunction, if issued, will not adversely affect the public interest." *Flood v. Clearone Communication, Inc.*, 618 F.2d 1110, 1117 (10th Cir. 2010).

The Tenth Circuit also requires a heightened level of scrutiny for certain "disfavored injunctions," requiring that ". . . the moving party makes a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012).

"If, however, the movant can demonstrate that the latter three elements weigh heavily in its favor, 'the test is modified, and the [movant] may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Kansas Judicial Watch v. Stout*, 653 F.3d 1230, 1234 (10th Cir. 2011) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Even if the Court applies the heightened scrutiny, Plaintiffs easily satisfy all these threshold requirements for obtaining preliminary injunctive relief, and the balance of interests weigh heavily in their favor.

I.   THE SECOND AMENDMENT APPLIES TO PLAINTIFF JACKSON AND SAF'S LEGAL ALIEN MEMBERS

The question of whether JACKSON, a lawful alien residing in New Mexico, and SAF's similarly-situated members enjoy Second and Fourteenth Amendment rights is an easy one – the Supreme Court has ruled that they do. ". . . '[T]he people' protected by the . . . Second

[Amendment] . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990).  That includes those who are legally in the country.  *See United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904).  Of course, New Mexico acknowledges this to some extent; legal aliens are allowed home firearm possession and the open carry of firearms in public.  However, New Mexico has arbitrarily decided that said legal aliens shall not be permitted to obtain a concealed carry permit.

"The Fourteenth Amendment provides, 'Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'  It has long been settled, and it is not disputed here, that the term 'person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. 365, 371 (1971) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886)).

State action violates equal protection rights if it separates individuals into discrete classes based on citizenship and subjects those individuals to disparate treatment.  *Graham*, 403 U.S. at 371, 377.  A classification based on an individual's status as an alien is "inherently suspect and subject to close judicial scrutiny."  *Id.* at 372.  "Aliens as a class are a prime example of a 'discrete and insular' minority (*see United States v. Carolene Products Co.*, 304 U.S. 144, 152-153, n. 4 (1938)) for whom such heightened judicial solicitude is appropriate."  *Graham*, 403 U.S. at 372.  "The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality

of legal privileges with all citizens under non-discriminatory laws." *Id.* at 374 (quoting

*Takahashi v. Fish & Game Commission*, 334 U.S. 410, 420 (1948)).

Further, legal aliens in the United States have been extended the same Constitutional

rights as citizens in a variety of other situations for more than one hundred years. *See*, *e.g.*,

*Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953) (resident alien is a "person" within the

meaning of the Fifth Amendment); *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (resident aliens

have First Amendment rights); *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931)

(Just Compensation Clause of Fifth Amendment); *Wong Wing v. United States*, 163 U.S. 228,

238 (1896) (resident aliens entitled to Fifth and Sixth Amendment rights). Even illegal aliens

then-presently in the Country receive protection under the Fourteenth Amendment's Due Process

Clause. (*See*, *e.g.*, *Zadvydas v. Davis*, 553 U.S. 678, 693 (2001)).

The Tenth Circuit recently addressed the issue of the constitutionality of 18 U.S.C. §

922(g)(5) as applied to an illegal alien, an issue not confronted here. *United States v. Huitron-*

*Guizar*, 678 F.3d 1164 (10th Cir. 2012). However, in discussing the post-*Heller* litigation, the

Court noted as to lawful permanent residents like JACKSON:

> The thrust of Heller, or at least the intended thrust of much post-
> Heller litigation, has been to broaden the right. Recently some
> state statutes that burden gun possession by lawful permanent
> aliens (which § 922(g)(5) does not cover) have been declared
> invalid under the Equal Protection Clause, which requires that
> strict scrutiny be applied to state laws that impose restrictions
> based on alienage. *See*, *e.g.*, *People v. Bounasri*, 31 Misc. 3d 304,
> 915 N.Y.S.2d 921, 924 (N.Y. City Ct. 2011) (invalidating New
> York statute dating from 1905, prohibiting non-citizens from
> possessing a dangerous weapon, and noting related decisions in
> Michigan, Nevada, California); *Fletcher v. Haas*, __ F.Supp.2d ___
> , 2012 U.S. Dist. LEXIS 44623, 2012 WL 1071713, at *14 (D.
> Mass. Mar. 30, 2012) (holding that Massachusetts's firearm regime
> contravenes the Second Amendment as applied to lawful
> permanent residents).

7

*Huitron-Guizar*, 678 F.3d at 1170.  Other Courts have also ruled along a line dividing the lawful

permanent resident from the illegal alien, where the lawful resident possesses Second

Amendment rights and the illegal alien does not.  *See*, *e.g.*, *United States v. Boffil-Rivera*, 2008

U.S. Dist. LEXIS 84633 at *32 (S.D. Fla. Aug. 12, 2008) ("Congress has made a policy

judgment, as it has in numerous other statutes, that *unlike citizens and legal residents*, illegal

aliens by their very unauthorized nature and lack of allegiance to the government of the United

States pose a greater risk to abuse firearms.") (Emphasis added.); *See also United States v.*

*Flores-Higuera,* 2011 U.S. Dist. LEXIS 84934 at *5 (N.D. Ga. July 6, 2011) ("Because

Defendant is not a citizen, or at the least, a lawful resident with ties to the community, the Court

concludes that he is not a member of the "political community" whose rights are protected by the

Second Amendment.)"

The Court concluded in *Fletcher v. Haas*, 2012 U.S. Dist. LEXIS 44623 (D. Mass. Mar.

30, 2012):

> With this framework in mind, I find no justification for refusing to
> extend the Second Amendment to lawful permanent residents.
> They have necessarily "developed sufficient connection with this
> country to be considered part of [the] community." *Verdugo-*
> *Urquidez*, 494 U.S. at 265.  Professor Rosberg has identified as
> "the traditional premise of the country's immigration policy—that
> resident aliens are virtually full-fledged members of the American
> community, sharing the burdens of membership as well as the
> benefits." Gerald M. Rosberg, *The Protection of Aliens from*
> *Discriminatory Treatment by the National Government*, 1977 Sup.
> Ct. Rev. 275, 337 (1978).  And then-Professor Aleinikoff, a former
> General Counsel of the Immigration and Nationalization Service,
> observed a decade ago,
>
> "Permanently residing aliens live and function much like citizens.
> They hold jobs, attend churches, send their children to school, and
> pay taxes. Children they give birth to in the United States are
> American citizens. From this perspective, the fact that aliens are
> not required by law to apply for citizenship is not surprising; in

8

day-to-day terms, permanently residing aliens and citizens are already largely indistinguishable."

*Fletcher*, 2012 U.S. Dist. LEXIS 44623 at 41-42 (quoting T. Alexander Aleinikoff, *Semblances of Sovereignty: The Constitution, the State, and American Citizenship* 173 (2002)).  Thus, the Court in *Fletcher* determined that the plaintiffs in that case, two lawful permanent resident aliens, were entitled to Second Amendment rights.  *Fletcher*, 2012 U.S. Dist. LEXIS 44623 at 43.

Additionally, on November 21, 2011, the District of Nebraska held that denying a lawful permanent resident the ability to possess a handgun in his home violated his fundamental Second Amendment rights.  *See Pliego-Gonzalez v. City of Omaha,* 8:11-CV-335 (Order of Court attached hereto).

Last year, the Seventh Circuit compared the analysis of infringements of Second Amendment rights to those of infringements of First Amendment rights (*See Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (ban on gun ranges within State limits ruled unconstitutional).  According to *Ezell*, infringements on the core Second Amendment right of possession for self-defense must satisfy a level of scrutiny approaching strict scrutiny.  *Id.* at 708. This means New Mexico's prohibition, ". . . a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end."  *Id.*  Though the Tenth Circuit has yet to consider the specific issue raised in this case, the *Ezell* decision is comprehensive, well-considered, and its holdings and reasoning should be followed by this Court.  Doing so, it is evident New Mexico cannot defend its arbitrary ban.  Further, under any level of scrutiny (rational basis not even being up for consideration under *District of Columbia v. Heller*, 128 S. Ct. 2783, 2818, fn 27 (2008)), New Mexico's statute fails.

II.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF
        PRELIMINARY INJUNCTIVE RELIEF.

JACKSON, and other members and supporters of SAF, enjoy a fundamental right to keep

and bear arms.  *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3042 (2010) (majority op.)

(Alito, J.).  "[T]he inherent right of self-defense has been central to the Second Amendment

right."  *Heller*, 128 S. Ct. at 2817.  The denial of constitutional rights, even if such deprivation

were temporary, constitutes irreparable harm for purposes of granting injunctive relief (*See*, *e.g.*,

*Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005) (First Amendment

freedom of speech) (citing *Elrod v. Burns*, 427 U.S. 347, 373, (1976)); *See also ACLU v.

Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) (restriction on dissemination of material by

computer).

As noted above, in *Ezell* the Seventh Circuit favorably compared the fundamental

freedoms of the Second Amendment to those fundamental freedoms of the First Amendment and

deemed the deprivation of either to be irreparable harm.  The *Ezell* Court held that "[t]he loss of

a First Amendment right is frequently presumed to cause irreparable harm based on 'the

intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if

those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from

exercising those rights in the future.' . . .  The Second Amendment protects similarly intangible

and unquantifiable interests.  *Heller* held that the Amendment's central component is the right to

possess firearms for protection. (cite omitted).  Infringements of this right cannot be

compensated by damages."  *See Ezell*, 651 F.3d at 699.

Put simply, if NMSA § 29-19-4.A(1) is not struck down, legal aliens including the

plaintiffs will continue to be unconstitutionally frustrated in their ability to exercise their

fundamental Second Amendment rights.

10

Considering that the Second Amendment exists to secure the right of armed self-defense, the inability for legal aliens to defend themselves against violence in a manner allowed not only by the vast majority of the United States, but also allowed to New Mexico residents who are U.S. citizens, also causes a profound loss of a sense of one's security, to say nothing of the irreparable harm resulting from a successful criminal attack.  Thus, the irreparable harm flowing from any delays in obtaining relief is palpable.

III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM OF THE BAN ON REGISTRATION BY LEGAL ALIENS.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as the concealed carry of a firearm such as a handgun for self-defense.  The infringement of constitutional rights is frequently considered to be beyond quantification with money damages.  This includes infringements of Second Amendment rights.  *See Ezell*, 651 F.3d at 699; *See also, e.g.*, *Pacific Frontier*, 414 F.3d at 1236 (City's violation of First Amendment right to freedom of commercial speech caused irreparable injury beyond quantifiable money damages).

No legal remedies will be available to legal aliens whose concealed carry permit applications will be refused because non-citizens are denied equal protection of New Mexico's firearms laws.  And quite obviously, no legal remedies will suffice to compensate those killed or injured for the inability to lawfully possess concealed defensive arms, owing to New Mexico's ban.

11

IV.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS NEW MEXICO'S BAN ON
       CONCEALED CARRY PERMITS VIOLATES THEIR SECOND AND
       FOURTEENTH AMENDMENT RIGHTS.

*Possession of Handguns for Lawful Purposes Including Self-Defense Lies at the Core of the
Second Amendment.*

As noted above, the Tenth Circuit require the Plaintiffs make a strong showing with

regard to the likelihood of success on the merits.  *See*, *e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1125

(10th Cir. 2012).

If, however, the movant can demonstrate that the [elements of irreparable injury, balance

of harms and public interest] weigh heavily in its favor, 'the test is modified, and the [movant]

may meet the requirement for showing success on the merits by showing that questions going to

the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for

litigation and deserving of more deliberate investigation.'"  *Kansas Judicial Watch v. Stout*, 653

F.3d 1230, 1234 (10th Cir. 2011) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir.

2002)).

Plaintiffs have demonstrated the other three elements weigh heavily in their favor, such

that the modified test should be applied here.  However, even if the Court requires a "strong

showing" of likelihood of success on the merits, Plaintiffs have done that, too.

"[T]he Court has acknowledged that certain unarticulated rights are implicit in

enumerated guarantees . . . fundamental rights, even though not expressly guaranteed, have been

recognized by the Court as indispensable to the enjoyment of rights explicitly defined."

*Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80 (1980).  Unsurprisingly, the Supreme

Court has noted that the enumerated, articulate right to possess a firearm for lawful purposes,

most notably for self-defense, are fundamentally core to the Second Amendment.  *McDonald*,

130 S.Ct. at 3043.

12

In *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights. *Heller*, 128 S. Ct. at 2818. A complete ban on concealed possession of firearms for an entire class of legal New Mexico residents, based on nothing more than citizenship status, will meet the same fate.

Therefore, New Mexico's Ordinance strongly fails all four factors. It is not within the State's constitutional power to ban otherwise qualified legal alien residents from possessing concealed firearms, including handguns which have been expressly deemed constitutionally protected by the Supreme Court (*See Heller*, 128 S.Ct. at 2817-18 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' would fail constitutional muster.") - doing so violates the Second and Fourteenth Amendments. The State has no interest, let alone an extremely strong one, in denying all legal aliens the fundamental Second Amendment right of handgun possession in the same manner available to citizens. In light of the above, a preliminary injunction against the enforcement of NMSA § 29-19-4.A(1) should be immediately entered.

V.      THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

The Plaintiffs are certain to prevail on the merits. Absent relief they will continue to suffer irreparable injury in the loss of Second and Fourteenth Amendment rights, if not actual physical harm. The State has no legitimate interest in the prohibition; and the public interest strongly favors equal protection of the law, and the respecting of fundamental rights, to say

nothing of the ability of all qualified New Mexico residents to defend themselves.  The balance

of interests could not more completely tilt in favor of immediate injunctive relief.

### CONCLUSION

New Mexico cannot deny Second and Fourteenth Amendment rights to an entire class of

its residents.  Plaintiffs respectfully request that the motion for preliminary injunctive relief be

granted.


Dated: August 9, 2012                                   Respectfully submitted,

David G. Sigale, Esq. (#6238103 (IL))          Paul M. Kienzle, III., Esq. (#7592 (NM))
LAW FIRM OF DAVID G. SIGALE, P.C.          SCOTT & KIENZLE, P.A.
739 Roosevelt Road, Suite 304                      P.O. Box 587
Glen Ellyn, IL 60137                                    Albuquerque, NM 87103
630.452.4547                                              (505) 246-8600
dsigale@sigalelaw.com                                paul@kienzlelaw.com
Admitted *pro hac vice*

                                                              By: _____ /s/ David G. Sigale _____
                                                                            David G. Sigale

                                                              One of the Attorneys for Plaintiffs

## <u>CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING</u>

The undersigned certifies that:

      1.     On August 9, 2012, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

      2.     Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                              /s/ David G. Sigale
                              One of the Attorneys for Plaintiffs

15