# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| JOHN W. JACKSON and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 1:12-CV-421-WDS-RHS |
| v. | ) ) | |
| GARY KING, in his Official Capacity as Attorney General of the State of New Mexico; and BILL HUBBARD, in his Official Capacity of as Director of the Special Investigations Division of the New Mexico Department of Public Safety, | ) ) ) ) ) ) ) | |
| Defendants. | | |

---

## DEFENDANTS HUBBARD AND KING'S MOTION FOR SUMMARY JUDGMENT

---

Office of the New Mexico Attorney General
P. Cholla Khoury
Assistant Attorney General
408 Galisteo St
Santa Fe, NM 87501

*Attorney for Defendants*
*Bill Hubbard and Gary King*

JUDGE: MCA
DATED: January 8, 2013

1

**Table of Contents**

Table of Contents .......................................................................................................... 2
Table of Authorities ..................................................................................................... 3
I.      STATEMENT OF THE CASE ............................................................................ 4
II.     STATEMENT OF UNDISPUTED FACTS ......................................................... 5
III.    ARGUMENT ...................................................................................................... 6
   A.   Defendants Prevail on Plaintiffs' Due Process Claim Because There Is No
Constitutional Right at Issue and the Statute Is Reasonably Related to an Important
Government Interest .................................................................................................... 6
      a.   Standard of Review ....................................................................................... 7
         i.    Plaintiffs' Fourteenth Amendment Claim Should Be Analyzed Under
Something Less than Strict Scrutiny Because There Is No Fundamental Right at
Issue and the Statute Falls Under the State's Traditional Constitutional
Prerogative. ............................................................................................................. 7
         ii.    Even Under Strict Scrutiny, Defendants Are Entitled to Summary Judgment
because the Statute Is Narrowly Tailored to Achieve the Compelling State Interest
of Protecting Public Safety. .................................................................................... 8
   B.   Defendants Are Entitled to Summary Judgment on the Second Amendment Claim
of Plaintiffs' Complaint Because the Statute Does Not Infringe on Plaintiffs' Second
Amendment Right. .................................................................................................... 12
   C.   Defendants Are Entitled to Summary Judgment On Plaintiffs' Preemption Claim
Because Regulating Concealed Carry Is Not Federally Preempted in Any Way. ........ 13
IV.    CONCLUSION ................................................................................................. 16

## Table of Authorities

**Cases**

*Abrams* v. *Johnson*, 521 U.S. 74, 117 S. Ct. 1925 (1997) ...................................... 9

*Arizona v. United States*, 132 S. Ct. 2492 (2012) ............................................... 15

*Brandenburg* v. *Ohio*, 395 U.S. 444, 89 S. Ct. 1827 (1969) ................................. 9

*Brigham City* v. *Stuart*, 547 U.S. 398, 126 S. Ct. 1943 (2006) ............................ 9

*Brown v. Hotel Employees*, 468 U.S. 491, 104 S. Ct. 3179 (1984) ....................... 14

Cabell v. Chavez-Salido 454 U.S. 432, 102 S. Ct. 735 (U.S. 1982) ..................... 7, 8

*District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008) ............... 9, 12

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S. Ct. 1210, (U.S. 1963) ..................................................................................................... 14

*Graham v. Richardson* 403 U.S. 365, 91 S. Ct. 1848 (1971) ................................ 7

*Hines v. Davidowitz*, 312 U.S. 52 (U.S. 1941) .................................................. 14

*Michigan Canners & Freezers Ass'n., Inc. v. Agricultural Marketing and Bargaining Board*, 467 U.S. 461, 105 S. Ct. 2518 (1984) ................................................. 14

*New York* v. *Quarles*, 467 U.S. 649, 104 S. Ct. 2626 (1984) ............................... 9

*Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S. Ct. 1147 (1947) .............. 14, 15

*Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 103 S. Ct. 2890, (1983) ............... 14

*Sherbert* v. *Verner*, 374 U.S. 398, 83 S. Ct. 1790 (1963) .................................. 9

*State ex. Rel.  N.M Voices for Children, Inc. V. Denko*, 90 P.3d 458 (N.M 2004) ............ 8

*State v. Chandler*, 5 La. Ann. 489 (1850) .................................................. 8, 9

*State v. McAdams,* 714 P.2d 1236 (Wy. 1986) .............................................. 8

*Sugarman v. Dougall*, 413 U.S. 634, 93 S. Ct. 2842 (1973) .............................. 7, 8

*Takahashi v. Fish & Game Commission*, 334 U.S. 410, 68 S. Ct. 1138 (1948) ........ 7

*Truax v. Raich*, 239 U.S. 33, 36 S. Ct. 7, (1915) .......................................... 7

*United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095 (1987) ........................ 9

**Statutes**

NMSA 1978, §29-19-4 ....................................................................... 9

NMSA 1978, §29-19-4(A) ................................................................. 10

NMSA 1978, §29-19-4(B) ................................................................. 10

NMSA 1978, §29-19-4(B)(1) ............................................................... 5

NMSA 1978, §29-19-4(B)(3) ............................................................... 5

NMSA 1978, §29-19-4(B)(4) ............................................................. 10

NMSA 1978, §29-19-4(B)(4). ......................................................... 5, 11

NMSA 1978, §29-19-5 ..................................................................... 5

NMSA 1978, §30-7-2 ....................................................................... 6

## I. STATEMENT OF THE CASE

On April 21, 2012, Plaintiffs John Jackson and Second Amendment Foundation[1] filed suit against Defendants Attorney General Gary King and Director of Special Investigations Division of the New Mexico Department of Public Safety, Bill Hubbard. In their complaint Plaintiffs allege New Mexico Statutes 1978, Section 29-19-4(A)(1) (the Act) violates the Second and Fourteenth Amendments of the U.S. Constitution. They also allege that the statute is preempted by federal law.  The undisputed facts of this case indicate that the Act is a reasonably restrictive means of regulating the concealed carry of a firearm in New Mexico.

The law is a reasonable exercise of the State's power to protect the public safety. While the Second Amendment protects the ability to defend oneself with the use of a firearm, carrying a firearm concealed on one's person is wholly outside the scope of the Second Amendment.  Plaintiffs' right to carry a firearm is not at issue in this case.  The only issue in this case is the ability of the State to regulate the traditional and historical state prerogative of limiting the concealed carry of firearms.  The statute is a narrowly tailored means of achieving that compelling state interest (even though the statute is not subject to strict scrutiny) that does not burden Plaintiffs' core constitutional rights.  There are no material issues of fact for the Court to decide and the undisputed facts show that Defendants Hubbard and King are entitled to summary judgment on all counts of Plaintiffs' complaint.  Fed. R. Civ. P. 56(a).

---

[1] For purposes of clarity, Plaintiff Jackson and members of Plaintiff SAF will here-forward be referred to collectively as "Plaintiffs".

## II.  STATEMENT OF UNDISPUTED FACTS

1.   If Plaintiff Jackson applied for a concealed carry permit (a permit), it would be denied on the basis of his non-U.S. citizenship. *See* Joint Status Report, Document 13, Filed 6/8/12.

2.  If a resident alien member, non-resident alien member or illegal alien member of the Second Amendment Foundation, Inc. who being otherwise qualified applied for a permit, it would be denied on the basis of his or her citizenship. *See Id.*

3.  Defendant Hubbard is the Director of the Special Investigations Division of the New Mexico Department of Public Safety.  In Defendant Hubbard's official capacity, he is responsible for enforcing certain of New Mexico's laws, customs, practices and policies specifically including NMSA 1978, § 29-19-4(A)(1) of the New Mexico Concealed Handgun Carry Act. *See Id.*

4.  Defendant Hubbard is the authority charged with processing permit applications and issuing permits for handguns to residents of New Mexico. *See* Affidavit of Bill Hubbard, attached hereto.

5.  Applicants who have any misdemeanor offense involving a crime of violence within the last ten years may not receive a permit under NMSA 1978, §29-9-4(B)(1).

6.  Applicants who have been convicted of an offense involving the possession or abuse of controlled substances within the last 10 years may not receive a permit under NMSA 1978, §29-19-4(B)(3).

7.  Applicants who have ever been convicted of a misdemeanor offense involving assault, battery or assault against a household member may not receive a permit pursuant to NMSA 1978, §29-19-4(B)(4).

8.  Defendant Hubbard, pursuant to the New Mexico Concealed Handgun Carry Act (NMSA 1978, §29-19-5), runs background checks on applicants for a permit. *See Id.*

9.  Defendant Hubbard's background check of applicants is run through two national databases; the National Instant Crime Background System (NICS) and the National Crime Information Computer (NCIC). *See Id.*

10. NICS and NCIC only show information about crimes that took place in the United States.  *See Id.*

11. There is no database which shows foreign convictions. *See Id.*

5

12. There is no way to run a background check on an individual for the time prior to that person living in the United States. *See Id.*

## III. ARGUMENT

**A. Defendants Prevail on Plaintiffs' Due Process Claim Because There Is No Constitutional Right at Issue and the Statute Is Reasonably Related to an Important Government Interest**

The New Mexico Concealed Handgun Carry Act, and specifically Section 4 of the Act, is an exception to New Mexico's prohibition, consistent with the United States and New Mexico Constitution, on the concealed carrying of a handgun in New Mexico. There is no Second Amendment right to carry a concealed handgun. Additionally, the requirements of Section 4 of the Act, when viewed within the entirety of the statutory scheme, pass constitutional muster. Plaintiff Jackson and members of Plaintiff Second Amendment Foundation are free to carry firearms openly, in public, for self defense. Additionally, the statutory scheme prohibiting unlawful carrying of a firearm allows for concealed carry of a handgun in one's own home, for transportation in a vehicle, and while on one's own private property. NMSA 1978, §30-7-2. Between the ability to openly carry a firearm and the ability to carry concealed when on one's own property or in one's vehicle, Plaintiffs and their alleged class are not denied the ability to protect themselves. Because the statute is not a violation of Plaintiffs Constitutional rights, Defendants are entitled to summary judgment.

   a.  **Standard of Review**

   i.  **Plaintiffs' Fourteenth Amendment Claim Should Be Analyzed Under Something Less than Strict Scrutiny Because There Is No Fundamental Right at Issue and the Statute Falls Under the State's Traditional Constitutional Prerogative.**

Plaintiffs' allegation of a Fourteenth Amendment violation should be analyzed under something less than strict scrutiny.  Because the concealed carry of a firearm does not implicate any Second Amendment right, Plaintiffs attempt to create a right that even citizens do not have-- the *right* to concealed carry of a firearm.  Plaintiffs contend that they cannot be denied their Second Amendment rights under the Fourteenth Amendment based on their alienage.  But the contention, of course, depends in the first instance on the existence of a right protected by the Second Amendment.  Because no such right is implicated here, Plaintiffs' contention fails.

This challenge to the Fourteenth Amendment is not subject to strict scrutiny. Cases which delineate based upon alienage have been analyzed under strict scrutiny only when the statute denies aliens an economic benefit or other fundamental right. (*See generally Graham v. Richardson*, 403 U.S. 365, 91 S. Ct. 1848 (1971); *Truax v. Raich*, 239 U.S. 33, 36 S. Ct. 7, (1915); *Takahashi v. Fish & Game Commission*, 334 U.S. 410, 68 S. Ct. 1138 (1948); *Sugarman v. Dougall*, 413 U.S. 634, 93 S. Ct. 2842 (1973)). Again, there is no fundamental right to carry a concealed firearm.  In *Cabell v. Chavez-Salido*, the Supreme Court recognized it is restrictions which primarily affect economic interests of permanent resident aliens which trigger strict scrutiny.  454 U.S. 432, 439, 102 S. Ct. 735, 739 (U.S. 1982).  In *Truax* the Court says that aliens "cannot live were they cannot work." 239 U.S. at 42.  It would be absurd to claim that "one cannot live

where one cannot conceal a weapon" and yet, that is exactly what Plaintiffs ask this Court to hold.

In *Sugarman*, the challenged law (out of New York) restricted certain civil service jobs to citizens.  In analyzing what level of scrutiny to apply to the case making a delineation based on citizenship the Court held "[o]ur scrutiny will not be so demanding where we deal with matters resting firmly within a State's constitutional prerogative." *Sugarman*, 413 U.S. at 648  (internal citations omitted).  *See also Cabell v. Chavez-Salido*, 454 U.S. 432, 102 S. Ct. 735 (1982).  In *Sugarman* the Court seems to carve out an exception to the prohibition on drawing citizen-based lines, when the issue is one that falls within the historical state prerogative.[2]  (*See* 413 U.S. at 648).   State bans on concealed carry of firearms are long standing and an issue firmly within the state's prerogative.  Such bans therefore should be subjected to a lesser scrutiny. *See State v. McAdams,* 714 P.2d 1236 (Wy. 1986), *State ex. Rel.  N.M Voices for Children, Inc. v. Denko*, 90 P.3d 458 (N.M. 2004), *State v. Chandler*, 5 La. Ann. 489 (1850)).

Since there is no fundamental right at issue here and no affect on the economic rights of resident aliens, the Act should be evaluated under a less stringent standard than strict scrutiny.  When evaluated under this standard, Defendants are entitled to summary judgment because the Act is related to the state's interest in public safety.

> **ii. Even Under Strict Scrutiny, Defendants Are Entitled to Summary Judgment because the Statute Is Narrowly Tailored to Achieve the Compelling State Interest of Protecting Public Safety.**

---

[2] Importantly, the right restricted by the State of New York in *Sugarman* is indisputably a fundamental right- the right to earn a living.

Even if the Act is analyzed under strict scrutiny, Defendants are still entitled to summary judgment because the Act is narrowly tailored to achieve the compelling state interest of protecting public safety through the regulation of concealed firearms.   To survive strict scrutiny a law must be narrowly tailored to meet a compelling state interest. *Abrams* v. *Johnson*, 521 U.S. 74, 82, 117 S. Ct. 1925, 1931 (1997). The Act survives this test.   The State has a compelling interest in regulating the concealed carry of a firearm because it falls clearly within the State's police power—the protection of public safety. The statute is also narrowly tailored when viewed as part of a statutory scheme.

Police powers are reserved to the states by the Tenth Amendment of the U.S. Constitution. Necessarily at the core of that police power is the ability to protect the public from the inherent danger that unregulated concealed weapons pose to the public. *Chandler*, 5 La. Ann. at 490.   Public safety is, itself, a compelling government interest. *See District of Columbia v. Heller*, 554 U.S. 570, 689, 128 S. Ct. 2783, 2851 (2008) (Breyer, J., dissenting) (citing *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095 (1987); *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827 (1969); *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S. Ct. 1790 (1963); *Brigham City v. Stuart*, 547 U.S. 398, 403-404, 126 S. Ct. 1943 (2006);  *New York v. Quarles*, 467 U.S. 649, 655, 104 S. Ct. 2626 (1984)).

The Act is also narrowly tailored to further this compelling government interest. NMSA 1978, §30-7-2 is clear that it is completely legal for a person to carry a concealed weapon in their home, on their own real property and in a vehicle.  Plaintiffs may even carry a firearm openly in public.   They simply cannot carry a concealed firearm in public.  Additionally, combined with the other requirements of NMSA 1978, §29-19-4,

9

the requirement of citizenship furthers the State's interest in protecting the public safety from unregulated concealed firearms.

Even if the applicant otherwise meets eligibility requirements under NMSA 1978, §29-19-4(A) he or she might still be disqualified from possessing a permit by NMSA 1978, §29-19-4(B). Even if the applicant meets all other criteria listed in the statute, an applicant must be denied a permit if he or she has a record of any misdemeanor offense involving a crime of violence or the possession or abuse of controlled substances within the last ten years. (NMSA 1978, §§29-19-4(B)(1), (3)) Additionally, an applicant must be denied a permit if he or she has a record of *ever* having a misdemeanor offense involving assault, battery or assault against a household member. (NMSA 1978, §29-19-4(B)(4)). These requirements for permit eligibility are part of the regulatory scheme designed by New Mexico to ensure only qualified persons receive a permit to conceal firearms and therefore further the compelling interest of public safety.[3]

The Act provides for Defendant Hubbard, through the Division of Special Investigations of the Department of Public Safety to run background checks on applicants seeking a concealed carry permit. (Statement of Undisputed Facts, p. 8) When running background checks, Defendant Hubbard seeks information about the applicant's criminal background, if any. If in the process of the background check Defendant Hubbard discovers the applicant has committed certain types of offenses, as listed above, he cannot issue a permit to that person.

If the applicant is a permanent resident alien, however, Defendant Hubbard lacks the ability to run a full background check on that individual. There is no international database for Defendant Hubbard to check for a criminal history. (Statement of

---

[3] Plaintiffs do not, of course, contest the Constitutionality of these provisions.

Undisputed Facts, para. 11).  A permanent resident alien who has been in the United States for eight years would only be subject to an eight year check on his criminal history.  The fact that the process of immigration includes a background check does not absolve the State from confirming on its own the background of applicants.  There are certainly crimes that would not prevent immigration but would prevent the individual from possessing a permit under New Mexico Law.

If Defendant Hubbard was compelled to grant permits to resident aliens, it is entirely possible that a citizen with exactly the same criminal history as a resident alien would be denied a license while the resident alien was granted one.  Citizens would be subjected to more demanding scrutiny than permanent resident aliens.  The State could not provide a less restrictive means for the citizenship requirement.  If the State reduced the standard to all citizens and resident aliens residing in the United States for the last 10 years, it still would not alleviate at least one valid concern of the State—whether the applicant has *ever* had an assault, battery or an assault against a family member.  *See* NMSA 1978, §29-19-4(B)(4).

Once a person is permitted to carry a concealed weapon, the State has a heightened interest in his or her whereabouts, his or her status and his or her general fitness and ability to carry a concealed weapon.  If the State is required to grant permits to non-citizens, it will be required to grant permits to persons over whom the state exercises very little control.  The immigration status of an alien could be changed by the United States and Defendant Hubbard, who is charged with enforcement of the Act could have no notice of that change.  By limiting permits to citizens, the State ensures that the permit

holder and his eligibility to carry a concealed firearm is discoverable to Defendant Hubbard and his division.

The requirement that permit holders be citizens of the United States is a narrowly tailored requirement that furthers the compelling interest of public safety through the regulation of the concealed carry of firearms by ensuring that the criteria established by the remainder of the Act are satisfied.

**B. Defendants Are Entitled to Summary Judgment on the Second Amendment Claim of Plaintiffs' Complaint Because the Statute Does Not Infringe on Plaintiffs' Second Amendment Right.**

Defendants are entitled to summary judgment on Plaintiffs' allegation of deprivation of their Second Amendment rights because regulations on the concealed carry of a firearm do not interfere with those rights. In fact, in *District of Columbia v. Heller*, the Court expressly notes that the right protected by the Second Amendment is not an unqualified right, that it is not "a right to keep and carry any weapon whatsoever in any manner whatsoever...." 554 U.S. 570, 626-27, 128 S. Ct. 2783, 2816-17, (2008). The Court recognizes the long-standing traditions of prohibition on concealed carrying of a firearm. *Id.* In short, the concealed carry of a firearm falls outside the scope of conduct protected by the Second Amendment. *Id.* Because there is no deprivation of Second Amendment rights, the Court does not even need to reach the question of which level of scrutiny applies.

The conduct protected by the Second Amendment is the ability to carry a weapon for self defense. The thrust of *Heller* is that the right to keep and bear arms is the right to bear arms to protect oneself, one's family and one's home. There is no such restriction on that right in New Mexico law. Aliens may possess and even openly carry a firearm in

12

New Mexico.  The ability to possess a firearm and the ability to conceal one in public are two different issues.  The issue here is only the ability of permanent resident aliens to conceal a firearm in public.   Plaintiffs may openly carry a firearm in public, if they so choose and they may carry one in any manner on their own property, in their car and most importantly, in their homes—that is the extent of their Second Amendment rights.

There is no violation of the Second Amendment here, as Plaintiffs claim, because Plaintiffs may openly carry a firearm for self defense in public and at home.  The Act does not place limitations on the ownership of firearms and it does not prevent Plaintiffs from defending one's self in public or home.

**C. Defendants Are Entitled to Summary Judgment On Plaintiffs' Preemption Claim Because Regulating Concealed Carry Is Not Federally Preempted in Any Way.**

The Act in no way intrudes upon federal immigration policy and therefore the Defendants are entitled to summary judgment as to the third count of Plaintiffs' complaint.  For the purposes of this law suit, Defendants do not contest that the federal government has exclusive authority over immigration policy.   In fact, Defendants recognize this fact.  But the Act does not disturb federal immigration policy.  This case is not about the ability of an alien to make a living.  It is not about the ability of an alien to receive federally-mandated state benefits.   This case is solely about the ability of the State to regulate an area that has traditionally and historically fallen within the state constitutional prerogative.  It would be ludicrous to claim "one cannot live where one cannot conceal a gun" and as such, the statute does not encroach upon the area of immigration—there is no preemption here.

13

There are three types of preemption.  First, the state law may be in direct opposition to a federal law. *Brown v. Hotel Employees*, 468 U.S. 491, 501, 104 S. Ct. 3179 (1984).  Second, the state law may be preempted if Congress has expressly or impliedly defined the scope of which federal law preempt state law.  *Michigan Canners & Freezers Ass'n., Inc. v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 469, 105 S. Ct. 2518, 2523 (1984) (citing  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95-96, 103 S. Ct. 2890, 2899-2900 (1983)).   Third, a state law may be preempted when Congress has evidenced intent to occupy the field or subject matter of the law.  *Brown*, 468 U.S. at 501 (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1147, 1152 (1947)).

The Act is not in direct opposition to a federal law.  To determine if the state law is in opposition to a federal law, the Court must ask "whether both regulations can be enforced without impairing the federal superintendence of the field[?]," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S. Ct. 1210, 1217 (U.S. 1963), or  does the law "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[?]," *Hines v. Davidowitz*, 312 U.S. 52, 67 (U.S. 1941).  The clear answer to these questions is an unqualified "yes".  The Act can be enforced without even contemplating immigration—it is a law concerning concealed firearms, not immigration.  In *Hines*, the state statute in question involved alien registration with the State of Pennsylvania.  That statute clearly impaired the federal superintendence of the field of immigration and stood as an obstacle to the purpose and objectives of Congress—namely the regulation and registration of immigrants.   That is not the case here.  The statute at issue here plays no role in the regulation of

14

immigration—it merely restricts the persons who can conceal a firearm in the State of New Mexico.  That restriction does not implicate any federal regulatory power, much less directly contradict a federal law.

Second, Congress has not expressly or impliedly preempted New Mexico's regulation of concealed carry. To begin with, there is no federal law regulating concealed carry at all.  But even if there was, when evaluating state law preemption, "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012) (citing *Rice*, 331 U.S. at 230).  The regulation of concealed carry of firearms, as discussed earlier, is historically a police power of the state.  Without a specific regulation enacted by Congress on the matter of concealed carry of firearms, and further, without the regulation expressly stating Congress intended to preempt state law, New Mexico's statute stands.

Lastly, there are no federal regulations that "occupy the field" of concealed carry. Plaintiffs claim the occupied field is immigration.  But, as discussed above, the ability to conceal a firearm does not limit, regulate or otherwise involve immigration.  As stated earlier, Plaintiffs and other aliens may openly carry a firearm in public.  They may own firearms and carry those firearms concealed on their persons when they are at home. They simply may not carry concealed firearms in public.  When looking at any piece of the Act as well as the act as a whole, it is clear that NMSA 1978, §29-19-4 regulates concealed carry and does not, in any way, regulate immigration.  As such, there are no federal regulations that occupy the field of concealed carry regulation.

15

## IV. CONCLUSION

Because there is no genuine issue of material fact, and because the undisputed facts indicate the citizenship requirement is constitutional, Defendants are entitled to summary judgment on all counts of Plaintiffs' complaint.   For the foregoing reasons Defendants request the Court: 1) grant summary judgment to the Defendants on all counts of Plaintiffs complaint, 2) order all parties to pay their own costs and 3) provide Defendants any additional relief to which they may entitled.

DATED: January 8, 2013

Respectfully Submitted,
**GARY K. KING**
**NEW MEXICO ATTORNEY GENERAL**

 /s/ P. Cholla Khoury
P. Cholla Khoury
Assistant Attorney General
New Mexico Attorney General's Office
408 Galisteo St
Santa Fe, NM 87501
(505)827-6088
(505)827-6036 (Facsimile)
ckhoury@nmag.gov

*Attorney for Defendants*
*Bill Hubbard and Gary King*

16

**CERTIFICATE OF SERVICE**

I hereby certify that I served a true and correct copy of the foregoing on Plaintiffs' counsel of record via email on January 8, 2013.

/s/ P. Cholla Khoury_____
P. Cholla Khoury