**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JOHN W. JACKSON and SECOND
AMENDMENT FOUNDATION,
INC.,**

      Plaintiffs,

      vs.                        **No. 2:12-CV-00421-MCA-RHS**

**GARY KING,** *in his Official Capacity
as Attorney General of the State of New
Mexico*, **and BILL HUBBARD,** *in his
Official Capacity as Director of the
Special Investigations Division of the
New Mexico Department of Public
Safety,*

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

      **THIS MATTER** is before the Court on *Defendants Hubbard and King's Motion for Summary Judgment*. [Doc. 31]  Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court grants in part and denies in part Defendants' motion.

## I.       BACKGROUND

Plaintiff John W. Jackson is a permanent resident alien of the United States who is qualified to obtain a concealed handgun license under the New Mexico Concealed Handgun Carry Act, NMSA 1978, § 29-19-1, *et seq.*, but for his lack of United States citizenship. [Doc. 31 UMF #1; Doc. 35 UMF #14]  Likewise, "[i]f a resident alien member, non-resident alien member or illegal alien member of the [Plaintiff] Second Amendment Foundation, Inc. [SAF] who being otherwise qualified applied for a permit, it would be denied on the basis of his or her citizenship." [Doc. 31 UMF #2]

Defendant Bill Hubbard is the Director of the Special Investigations Division of the New Mexico Department of Public Safety.  In his official capacity, Defendant Hubbard is responsible for enforcing New Mexico's Concealed Handgun Carry Act. [Doc. 31 UMF #3]  Specifically, Defendant Hubbard is the authority charged with processing concealed handgun license applications and issuing concealed handgun licenses to residents of New Mexico who are United States Citizens. [Doc. 31 UMF #4] In this capacity, and pursuant to the requirements in NMSA 1978, § 29-19-5, he runs background checks on all applicants for a concealed handgun license. [Doc. 31 UMF #8] Defendant Hubbard's background check of applicants is run through two national databases:  the National Instant Crime Background System (NICS) and the National Crime Information Computer (NCIC).  The parties dispute the extent to which these databases include information regarding foreign convictions that would disqualify an applicant from obtaining a concealed handgun license under New Mexico law.  See § 29-

19-4(B).

On April 21, 2012, Plaintiffs John W. Jackson and the Second Amendment Foundation, Inc. (SAF), filed their *Complaint* [Doc. 1] "pursuant to 42 U.S.C. § 1983 for deprivation of civil rights under color of law, [seeking] equitable, declaratory, and injunctive relief challenging the State of New Mexico's prohibition on otherwise qualified non-U.S. citizens who legally reside in New Mexico from obtaining a concealed handgun license, pursuant to section NMSA 1978, § 29-19-4(A)(1) of the New Mexico Concealed Handgun Carry Act." [Doc. 1 at 1]  Plaintiffs allege that the citizenship requirement in Section 29-19-4(A)(1) violates the right to keep and bear firearms in the Second Amendment to the United States Constitution, the Equal Protection Clause of the United States Constitution, and is preempted by federal immigration law. [Doc. 1 at 6-7]

On January 8, 2013, Defendants Hubbard and King filed the present motion for summary judgment. [See Doc. 31]  Defendants contend that they are entitled to summary judgment on Plaintiffs' Second Amendment claim because the Second Amendment does not protect the concealed carrying of handguns. [Doc. 31 at 12-13]  With respect to Plaintiffs' Equal Protection claim, Defendants contend that even though New Mexico's Concealed Handgun Carry Act distinguishes between individuals on the basis of citizenship, strict scrutiny is inapplicable because the Act does not deny aliens an economic benefit or other fundamental right. [Doc. 31 at 7]  Even if strict scrutiny is applicable, Defendants contend that they are entitled to summary judgment because the government has a compelling governmental interest in public safety and the Act is

3

narrowly tailored to serve this interest. [Doc. 31 at 9-12]  Lastly, Defendants contend that Plaintiffs' preemption claim must fail because New Mexico's Concealed Handgun Carry Act does not does not intrude upon federal immigration policy. [Doc. 31 at 13-15]

On March 30, 2013, the Court granted *Defendant Gary King's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and For Lack of Standing*. [See Docs. 28 and 41]  The Court held that Defendant Gary King, Attorney General of the State of New Mexico, was not a proper party litigant because he has "discretion to refuse to defend this action on behalf of the state." [Doc. 41 at 5] Accordingly, Defendant King is no longer a party to the present action.

On March 30, 2013, the Court also granted *Plaintiffs' Motion for Preliminary Injunction*. [See Docs. 18 and 42]  The Court rejected Plaintiffs' Second Amendment claim on the basis of Peterson v. Martinez, 707 F.3d 1197 (10th Cir. 2013), which held that "the Second Amendment does not confer a right to carry concealed weapons." Id. at 1211.  However, the Court held that Plaintiffs had demonstrated a substantial likelihood of success on the merits of their Equal Protection claim because alienage is a suspect classification and the citizenship requirement in Section 29-19-4 was not narrowly tailored to further a compelling governmental interest.  The Court recognized that protecting the public from the dangers inherent in concealed weapons is a compelling governmental interest.  However, the Court determined that Defendant Hubbard failed to demonstrate a close fit between the citizenship requirement and the state's compelling interest because "[t]here is no argument made, much less any evidence proffered, that a

4

permanent resident alien, such as Mr. Jackson, who resides in this country legally, poses a greater danger by virtue of his or her status alone, when carrying a concealed loaded firearm, than do United States citizens." [Doc. 42 at 18]  Because Plaintiffs would suffer irreparable harm as a consequence of the deprivation of their constitutional rights, and because the public interest and balance of the harms supported the issuance of preliminary injunctive relief, this Court preliminarily enjoined Defendant Hubbard from enforcing the citizenship provision in Section 29-19-14(A)(1) of the Concealed Handgun Carry Act pending resolution of this action. [Id. at 24]

## II.    STANDARD

Summary judgment under Fed.R.Civ.P. 56  shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "  Fed.R.Civ.P. 56(a).  When a motion for summary judgment is made and supported as provided in this rule, the adverse party must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.  It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

## III.   DISCUSSION

### A.     New Mexico Statute

Plaintiffs may openly carry a loaded firearm in accordance with Article II, Section 6 of the New Mexico Constitution.  See N.M. Const. art. II, § 6 ("No law shall abridge the right of the citizen to keep and bear arms for security and defense, for lawful hunting and recreational use and for other lawful purposes, but nothing herein shall be held to permit the carrying of concealed weapons. No municipality or county shall regulate, in any way, an incident of the right to keep and bear arms.").  However, the State of New Mexico's Concealed Handgun Carry Act does not permit non-United States citizens to carry a loaded concealed firearm.  Specifically, Section 29-19-4 provides, in relevant part, as follows:

A.     The department shall issue a concealed handgun license to an applicant who:

     (1)     is a citizen of the United States;

     (2)     is a resident of New Mexico or is a member of the armed forces whose permanent duty station is located in New Mexico or is a dependent of such a member;

     (3)     is twenty-one years of age or older;

     (4)     is not a fugitive from justice;

     (5)     has not been convicted of a felony in New Mexico or in any other state or pursuant to the laws of the United States or any other jurisdiction;

     (6)     is not currently under indictment for a felony criminal offense in New Mexico or any other state or pursuant to the laws of the United States or any other jurisdiction;

     (7)     is not otherwise prohibited by federal law or the law of any other jurisdiction from purchasing or possessing firearms;

     (8)     has not been adjudicated mentally incompetent or committed to a mental institution;

     (9)     is not addicted to alcohol or controlled substances; and

     (10)   has satisfactorily completed a firearms training course approved by the department for the category and the largest caliber of handgun that the applicant wants to be licensed to carry as a concealed handgun.

Although non-citizens cannot obtain a concealed handgun license, they may nonetheless carry a concealed loaded firearm in the following limited circumstances:

     (1)     in the persons's residence or on real property belonging to him as owner, lessee, or licensee;

     (2)     in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property.

NMSA 1978, § 30-7-2.  In any other circumstance, carrying a loaded concealed firearm without a "valid concealed handgun license issued . . . by the department of public safety pursuant to the provisions of the Concealed Handgun Carry Act" is a petty misdemeanor.

Id.

Prior to the issuance of a concealed handgun license, the Department of Public

Safety (Department) "shall conduct an appropriate check of available records and shall

forward the applicant's fingerprints to the federal bureau of investigation for a national

criminal background check."  NMSA § 1978, § 29-19-5(D).  Section 29-19-4(b) provides

that the Department "shall deny a concealed handgun license to an applicant who has":

> (1)     received a conditional discharge, a diversion or a deferment or has
> been convicted of a misdemeanor offense involving a crime of violence;
> (2)     been convicted of a misdemeanor offense involving driving while
> under the influence of intoxicating liquor or drugs within five years
> immediately preceding the application for a concealed handgun license;
> (3)     been convicted of a misdemeanor offense involving the possession
> or abuse of a controlled substance; or
> (4)     been convicted of a misdemeanor offense involving assault, battery
> or battery against a household member.

§ 29-19-4(B).

### B.    *Second Amendment*

The Second Amendment provides as follows: "A well regulated Militia, being

necessary to the security of a free State, the right of the people to keep and bear Arms,

shall not be infringed."  This provision is "fully applicable to the States."  McDonald v.

City of Chicago, 130 S. Ct. 3020, 3026 (2010) (citations omitted).

In District of Columbia v. Heller, 554 U.S. 570, 592 (2008), the United States

Supreme Court held that the Second Amendment guarantees "the individual right to

possess and carry weapons in case of confrontation."  However, the Court cautioned that

"the right [is] not a right to keep and carry any weapon whatsoever, in any manner

whatsoever and for whatever purpose."  Id. at 626.  "For example, the majority of 19th-

century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues."  Id.  Although the Court did "not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," the Court stated that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or law imposing conditions and qualifications on the commercial sale of arms."  Id. at 626-27.

After examining the history and text of the Second Amendment, the Heller Court held that the District of Columbia's total ban on handgun possession in the home was unconstitutional.  The Court reasoned that:

> the inherent right of self-defense has been central to the Second Amendment right.  The handgun ban amounts to a prohibition on an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose.  The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute.  Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' . . . would fail constitutional muster.

Id. at 628-29 (citation omitted)

Following Heller, our Tenth Circuit Court of Appeals adopted "a two-pronged approach to Second Amendment challenges."  United States v. Reese, 627 F.3d 792, 800 (10th Cir. 2010) (internal quotation marks and citation omitted); see also Peterson v. Martinez, 707 F.3d 1197, 1208 (10th Cir. 2013).

> Under this approach, a reviewing court first ask[s] whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. If it does not, [the court's] inquiry is complete. If it does, [the court] must evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid.

Reese, 627 F.3d at 800-01 (alterations in original) (internal quotation marks and citations omitted).

Thus, in the present case, the Court first must determine whether New Mexico's Concealed Handgun Carry Act imposes a burden on conduct that falls within the scope of the Second Amendment's guarantee.  The Tenth Circuit Court of Appeals' recent pronouncement in Peterson is dispositive of this issue.  In Peterson, the plaintiff (a non-resident of the State of Colorado) challenged a Colorado statute that required Colorado residency for the issuance of a concealed carry permit.  However, the statute did "not affect the ability of non-residents to openly carry firearms in the state."[1]  Id. at 1209.  The Court noted that, in Robertson v. Baldwin, 165 U.S. 275, 281-82 (1897), the United States Supreme Court stated that "the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons."  Noting that this statement was "plainly obiter dicta" the Court noted that it was "'bound by Supreme

---

[1]The Court noted that a municipal ordinance in the Denver Revised Municipal Code prohibited "individuals from carrying firearms–concealed or not–unless the individuals holds a valid [concealed handgun license] or 'is carrying the weapon concealed within a private automobile or other private means of conveyance, for hunting or for lawful protection of such person's or another person's person or property, while traveling.'"  Peterson, 707 F.3d at 1202 (quoting Denver Rev. Mun. Code § 38-117(a), (b) & (f)).  However, the plaintiff did not challenge the constitutionality of the municipal ordinance and, therefore, the Court did not address it.  Id. at 1208-09.

Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements.'" Peterson, 707 F.3d at 1210 (quoting United States v. Serawop, 505 F.3d 1112, 1122 (10th Cir. 2007)).  Although not recent, "the Supreme Court's contemporary Second Amendment jurisprudence does nothing to enfeeble–but rather strengthens–the statement that concealed carry restrictions do not infringe the Second Amendment right to keep and bear arms." Id.

The Court observed that "[t]here can be little doubt that bans on the concealed carrying of firearms are longstanding." Id.  Indeed, in Heller, the Supreme Court held that "[g]iven this lengthy history of regulation, restrictions on concealed carry qualify as 'longstanding' and thus 'presumptively lawful regulatory measures.'" Id. at 1211 (quoting Heller, 554 U.S. at 626 & n.26).  In light of Robertson and Heller, the Court concluded that the plaintiff's "Second Amendment claim fails at step one of our two-step analysis:  the Second Amendment does not confer a right to carry concealed weapons." Id. Accordingly, the "Peterson's Second Amendment claim was properly subject to summary judgment." Id. at 1212.

Like the statute at issue in Peterson, the New Mexico Concealed Handgun Carry Act does not affect the ability of non-citizens to carry firearms openly in the state. Rather, it only restricts the ability of non-citizens to carry concealed firearms.  Because the concealed carrying of firearms is not protected by the Second Amendment, the Court concludes that the Act does not impose a burden on conduct that falls within the scope of the Second Amendment's guarantee.  Plaintiffs' Second Amendment claim therefore fails

11

step one of the two-step analysis and this Court's inquiry stops there.  The Court will grant summary judgment in favor of Defendant Hubbard.

C.     *Equal Protection and Applicable Level of Scrutiny*

The Equal Protection Clause of the Fourteenth Amendment provides as follows: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Equal protection "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Governmental classifications are subject to strict scrutiny under the Equal Protection Clause if they burden a fundamental right or target a suspect class.  Save Palisade FruitLands v. Todd, 279 F.3d 1204, 1210 (10th Cir. 2002).  "To survive strict scrutiny, the government must show that its classification is narrowly tailored to achieve a compelling government interest." KT.& G Corp v. Attorney General of State of Okla., 535 F.3d 1114, 1137 (10th Cir. 2008).

Although New Mexico's Concealed Handgun Carry Act does not burden a fundamental right, it nonetheless may be subject to strict scrutiny if it targets a suspect class.  See 16B Am. Jur. 2d Constitutional Law § 834 ("The plaintiff need not prove that another fundamental right was trampled, as the right to equal protection of the laws is itself fundamental . . .").  Alienage is a suspect classification and state statutes that discriminate on the basis of alienage are subject to strict scrutiny.  See Graham v. Richardson, 403 U.S. 365, 371-72 (1971) (holding that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial

12

scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority . . . for whom such heightened judicial solicitude is appropriate") (citation and footnotes omitted); Soskin v. Reinertson, 353 F.3d 1242, 1254 (10th Cir. 2004) (recognizing that "Supreme Court precedents establish . . . [that] states on their own cannot treat aliens differently from citizens without a compelling justification").  New Mexico's Concealed Handgun Carry Act discriminates on the basis of alienage and, therefore, the Court determines that strict scrutiny is the applicable legal standard.  Indeed, in United States v. Huitron-Guizar, 678 F.3d 1164, 1170 (10th Cir. 2012), our Tenth Circuit Court of Appeals recognized that, under the Equal Protection Clause, state laws regulating the possession of firearms that discriminate against permanent resident aliens must survive strict scrutiny.  See id. ("Recently some state statutes that burden gun possession by lawful permanent aliens . . . have been declared invalid under the Equal Protection Clause, which requires that strict scrutiny be applied to state laws that impose restrictions based on alienage.").

Defendant Hubbard contends, however, that pursuant to Sugarman v. Dougall, 413 U.S. 634, 648 (1973), the Court's scrutiny should not be so demanding because the concealed carrying of a firearm is a matter "resting firmly within a State's constitutional prerogatives."  The Court disagrees.  In Sugarman, the plaintiffs, who were federally registered aliens, challenged a New York statute that restricted civil service to United States citizens.  Id. at 635-36.  Applying strict scrutiny, the United States Supreme Court held that the indiscriminate citizenship requirement in the civil service law violated the

Equal Protection Clause of the United States Constitution.  Id. at 643.  In arriving at its

conclusion, the Court recognized that the State may "in an appropriately defined class of

positions, require citizenship as qualification for office."  Id. at 647.  "Such power inheres

in the State by virtue of its obligation . . . to preserve the basic conception of a political

community."  Id. (Internal quotation marks and citations omitted.).  Although "such state

action, particularly with respect to voter qualifications is not wholly immune from

scrutiny under the Equal Protection Clause," the Court noted that its "scrutiny will not be

so demanding where we deal with matters resting firmly within a State's constitutional

prerogatives."  Id. at 648. The Court explained as follows:

> This is no more than a recognition of a State's historical power to exclude
> aliens from participation in its democratic political institutions . . . and a
> recognition of a State's constitutional responsibility for the establishment
> and operation of its own government, as well as the qualification of an
> appropriately designated class of public office holders. . . This Court has
> never held that aliens have a constitutional right to vote or to hold high
> public office under the Equal Protection Clause.  Indeed, implicit in many
> of this Court's voting rights decisions is the notion that citizenship is a
> permissible criterion for limiting such rights. . . . A restriction on the
> employment of noncitizens, narrowly confined, could have particular
> relevance to this important state responsibility, for alienage itself is a factor
> that reasonably could be employed in defining political community.

Id. at 648-49  (Internal quotation marks and citations omitted).

New Mexico's Concealed Handgun Carry Act does not seek to preserve the basic

conceptions of a state political community.  See Chan v. City of Troy, 559 N.W. 2d 374,

376 (Mich. App. 1997) (per curiam) (applying strict scrutiny to Michigan's concealed

handgun statute because "[t]he purchase or possession of a pistol clearly is not a function

14

bound up with the operation of the State as a governmental entity, nor does it otherwise involve the implementation of the sovereign powers of a state" (internal quotation marks and citations omitted)).  Nor does the Act affect the State's constitutional responsibility for the establishment and operation of its own government or the qualification of its voters or a designated class of public office holders.

This Court concludes that the Act does not pertain to "matters resting firmly within the State's constitutional prerogative," as defined by Sugarman.

Alternatively, Defendant Hubbard contends that strict scrutiny is inapplicable because New Mexico's Concealed Handgun Carry Act does not deprive aliens of an economic benefit. [Doc. 20 at 5]  Defendant Hubbard fails to cite any legal authority indicating that strict scrutiny is only applicable to state economic legislation that discriminates on the basis of alienage.  In the seminal case of City of Cleburne, the United States Supreme Court observed that strict scrutiny is the appropriate standard to be used when "*social or economic legislation*" discriminates on the basis of alienage.  473 U.S. at 440 (emphasis added).  Indeed, courts typically apply strict scrutiny to state social legislation, like New Mexico's Concealed Handgun Carry Act, that restricts the possession of concealed firearms on the basis of alienage.  See, e.g.,Smith v. South Dakota, 781 F. Supp. 2d 879, 884 (D. S.D. 2011); State v. Ibrahim, 269 P.3d 292, 296-97 (Wa. App. 2011); People v. Bounasri, 31 Misc. 3d 304, 2011 WL 356059, at * 2 (N.Y. City Ct. 2011).

Defendant Hubbard contends, in the alternative, that even if strict scrutiny is the

applicable legal standard, the State of New Mexico has a compelling interest in protecting the public from concealed carry of firearms because of the inherent danger that unregulated concealed weapons pose to the public.  It remains undisputed that the state has a compelling interest in protecting the public from concealed firearms.  As the Second Circuit Court of Appeals recognized in Kachalsky v. County of Westchester, 701 F.3d 81, 97 (2d Cir. 2012), the states have a "substantial, indeed compelling, government interest[] in public safety and crime prevention."  See also Fletcher v. Haas, 851 F. Supp. 2d 287, 303 (D. Mass. 2012) (recognizing that Massachusetts "has an interest in regulating firearms to prevent dangerous persons from obtaining firearms").  The pivotal question in this case, however,  is whether the citizenship requirement is narrowly tailored to serve this interest.  It is at this level of inquiry that Defendant fails the test.

"The purpose of the narrow tailoring requirement is to ensure that 'the means chosen "fit" th[e] compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate . . . prejudice or stereotype.'" Grutter v. Bollinger, 539 U.S. 306, 333 (2003) (quoting Richmond v. J.A. Croson Co., 488 U.S. 469, 493 (1989) (plurality opinion)).  There is no argument, much less any evidence proffered, that aliens who reside in this country legally pose a greater danger when carrying a concealed loaded firearm than do United States citizens.  Indeed, "[a]ny classification which treats all aliens as dangerous and all United States citizens as trustworthy rests upon a very questionable basis." People v. Rappard, 28 Cal. App. 3d 302, 305 (Cal. Ct. App. 1972); see also Fletcher, 851 F.Supp.2d at 303 ("Any

classification based on the assumption that lawful permanent residents are categorically dangerous and that all American citizens by contrast are trustworthy lacks even a reasonable basis.").  For these reasons, various courts have concluded that state laws, like New Mexico's Concealed Handgun Carry Act, which impose an indiscriminate ban precluding all legal resident aliens from carrying concealed firearms violate the Equal Protection Clause of the United States Constitution.  See, e.g., Smith, 781 F. Supp. 2d at 886; Rappard, 28 Cal. App. 3d at 305; State v. Chumphol, 634 P.2d 451, 452 (Nev. 1981); Bounasri, 2011 WL 356059, at *3; Chan, 559 N.W. 2d at 376; Ibrahim, 269 P.3d at 296-97.

Defendant Hubbard contends that the citizenship requirement is narrowly tailored to serve the governmental interest in public safety because he "lacks the ability to run a full background check" on non-citizens since "[t]here is no international database . . . to check for a criminal history." [Doc. 31 at 10] In support thereof, he submitted his own affidavit averring that "none of the databases currently available to run background checks necessarily contain information involving a disqualifying conviction in a foreign jurisdiction." [Doc. 31-1 at 2]  Because he cannot ascertain whether a non-citizen applicant has ever been convicted of any of the disqualifying crimes listed in Section 29-19-4(B) while living abroad, Defendant Hubbard argues that "[t]he requirement that permit holders be citizens of the United States is a narrowly tailored requirement that further the compelling interest of public safety through the regulation of the concealed carry of firearms by ensuring that the criteria established by the remainder of the Act are

17

satisfied." [Doc. 31 at 12]

      Plaintiffs dispute Defendant Hubbard's assertion that there is no international database to check for a disqualifying criminal history, pointing out that the NCIC database consists of the following:

> 21 files, including the Foreign Fugitive File, which contains: "Records on persons wanted by another country for a crime that would be a felony if it were committed in the United States."  The NCIC database also contains the Immigration Violator File, which contains: "Records on criminal aliens whom immigration authorities have deported and aliens with outstanding administrative warrants of removal.

[Doc. 35 at 11] In further support thereof, Plaintiffs rely on an excerpt from the Federal Bureau of Investigation's (FBI) website, which describes the contents of the NCIC files. See http://www.fbi.gov/about-us/cjis/ncic/ncic_files.  Assuming, without deciding, that the excerpt from the FBI website constitutes admissible evidence for purposes of opposing a motion for summary judgment, this evidence simply establishes that an NCIC search will disclose a legal permanent resident's felony convictions and immigration status.  Notably, this evidence fails to establish that a legal permanent resident's disqualifying misdemeanor convictions, as set forth in Section 29-19-4(B), will be reported in a NCIC search.  Accordingly, the Court concludes that there is no genuine dispute of material fact that Defendant Hubbard is unable "to run adequate background checks that encompass the ability to ascertain disqualifying convictions in a foreign jurisdiction." [Doc. 31-1 at 2]

      The Court recognizes that the limitations inherent in a NCIC background check are

18

not peculiar to an applicant's citizenship status. A NCIC background check will not

reveal whether a United States citizen who applies for a concealed handgun license was

convicted of a disqualifying misdemeanor conviction while traveling or living abroad.

Yet, United States citizens who have traveled or lived abroad are not denied such licenses

due to Defendant Hubbard's inability to run an adequate background check regarding

disqualifying convictions in a foreign jurisdiction. Therefore, the Court concludes that

the citizenship requirement is not narrowly tailored to serve the Government's compelling

interest in public safety. See Smith, 781 F. Supp. 2d at 886-87 (holding that the

citizenship requirement in South Dakota's concealed carry statute was not narrowly

tailored to achieve a compelling governmental interest, even though the state's

background check, Triple I, only covered crimes committed in the United States because

"the Triple I's effectiveness does not depend on whether the crime is committed by a

United States citizen" and "[i]f the Triple I background check is sufficient to achieve the

state's interests with regard to United States citizens who may or may not be dangerous or

otherwise unsuitable for a permit, then the Triple I background check is also sufficient

with regard to [the plaintiff] in light of his extended residency in the United States").

Defendant Hubbard's motion for summary judgment on Plaintiff's Equal Protection claim

will be denied.

D.     _Preemption_

    The Supremacy Clause provides that federal law "shall be the supreme Law of the

Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution

or Laws of any State to the Contrary notwithstanding." U.S. Const. art VI, cl. 2. "Under this principle Congress has the power to preempt state law." <u>Arizona v. United States</u>, 132 S.Ct. 2492, 2500 (2012). There are three types of preemption: (1) express preemption, "when a federal statute expressly preempts state law"; (2) field preemption, "where Congress intends to occupy a field"; and (3) conflict preemption, where "a state law conflicts with a federal law." <u>Colorado Dept. of Pub. Health and Env't, Hazardous Materials and Waste Mgmt Div. v. United States</u>, 693 F.3d 1214, 1222 (10th Cir. 2012). "In preemption analysis, courts should assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." <u>Arizona</u>, 132 S.Ct. at 2501 (internal quotation marks and citation omitted).

Plaintiffs appear to concede that express preemption and conflict preemption are inapplicable to this case because there is no federal law regarding a national concealed carry policy. Rather, Plaintiffs contend that Congress intended to occupy the field of immigration and that New Mexico's Concealed Handgun Carry Act is preempted because it discriminates "against lawful resident aliens in such a way that puts them in physical danger," thereby violating "the governmental objectives of ensuring safety, security, and equal protection for said aliens." [Doc. 35 at 26]

"The ordinary principles of preemption include the well-settled proposition that a state law is preempted where it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." <u>Arizona</u>, 132 S.Ct. at 2505 (internal quotation marks and citation omitted). Although the protection of lawful resident aliens

20

may be a Congressional purpose in the enactment of immigration laws, <u>see id.</u> at 2498, the Court fails to see how New Mexico's Concealed Handgun Carry Act stands as an obstacle to the fulfillment of this purpose.  As previously explained, lawful resident aliens are permitted to carry firearms openly in the state.  <u>See</u> N.M. Const. art. II, § 6. Additionally, lawful resident aliens are permitted to carry a loaded concealed firearm in their "residence or on real property belonging to [them] as owner, lessee, or licensee" and "in a private automobile or other private means of conveyance, for lawful protection." NMSA 1978, § 30-7-2.  Given that nothing in the Act deprives lawful resident aliens of their ability to arm themselves for protection, the Court rejects Plaintiffs' preemption claim.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that New Mexico's Concealed Carry Handgun Act discriminates against a suspect class and is not narrowly tailored to achieve the Government's compelling interest in public safety.  The Court further concludes that New Mexico's Concealed Carry Handgun Act does not infringe on Plaintiffs' Second Amendment rights and is not preempted by federal law.

Accordingly, the Court will grant Defendant Hubbard's motion for summary judgment with respect to Plaintiffs' Second Amendment and preemption claims, and will deny Defendant Hubbard's motion with respect to Plaintiffs' Equal Protection claim.

**IT IS THEREFORE HEREBY ORDERED** that *Defendants Hubbard and King's Motion for Summary Judgment* [Doc. 31] is **GRANTED IN PART AND**

**DENIED IN PART**.

   **SO ORDERED** this 17th day of September, 2013 in Albuquerque, New Mexico.


M. CHRISTINA ARMIJO
Chief United States District Judge