UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JOHN W. JACKSON and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| -against- | ) ) ) |
| GORDON E. EDEN, in his Official Capacity as Director of the Special Investigations Division of the New Mexico Department of Public Safety, | ) ) ) ) ) ) |
| Defendant. | ) |

Case No. 1:12-CV-421-MCA-RHS

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND EXPENSES

Come now Plaintiffs, JOHN W. JACKSON and SECOND AMENDMENT FOUNDATION, INC., by and through counsel, and respectfully submit their Memorandum of Points and Authorities in Support of their Motion for Attorney's Fees and Costs.

Dated: April 30, 2014

                                                  Respectfully submitted,

                                                  /s/ David G. Sigale
                                                One of the Attorneys for Plaintiffs

| | |
|---|---|
| David G. Sigale, Esq. (#6238103 (IL)) | Paul M. Kienzle, III., Esq. (#7592 (NM)) |
| LAW FIRM OF DAVID G. SIGALE, P.C. | SCOTT & KIENZLE, P.A. |
| 739 Roosevelt Road, Suite 304 | P.O. Box 587 |
| Glen Ellyn, IL 60137 | Albuquerque, NM 87103 |
| 630.452.4547 | (505) 246-8600 |
| dsigale@sigalelaw.com | paul@kienzlelaw.com |
| Admitted *pro hac vice* | |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

## INTRODUCTION

Plaintiffs challenged New Mexico's prohibition on lawful resident aliens obtaining concealed carry permits for self-defense purposes. Complaint, Dkt #1, at ¶ 1; *see also id.* at ¶10, 12 (each Plaintiff "would carry a loaded and functional handgun in public for self-defense"); *id.* at Prayer for Relief 1, 2 (right to carry handguns). Having completely prevailed, Plaintiffs are entitled to recover their attorney fees and costs.

Congress's logic in promulgating fee-shifting provisions like 42 U.S.C. § 1988 is clear. Sentimental idealism aside, the law will not be enforced in our market economy unless someone pays attorneys their market rates to enforce it.

If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases. S. Rep. 1011, 94th Cong., 2d Sess. 5 (1976). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citations, internal punctuation omitted).

Where, as here, the relief sought is generally nonmonetary, a substantial fee is particularly important if that statutory purpose is to be fulfilled. It is relatively easy to obtain competent counsel when the litigation is likely to produce a substantial monetary award. It is more difficult to attract counsel where the relief sought is primarily nonmonetary. *Copeland v. Marshall*, 641 F.2d 880, 907 (D.C. Cir. 1980). Nor does available monetary relief fully reflect

the value of civil rights litigation. "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) (citation omitted).

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Adjustments to that fee then may be made as necessary in the particular case." *Blum v. Stenson*, 465 U.S. 886, 888 (19 84) (citation omitted). "The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). "The quality of the lawyer's performance in the case should also be considered in placing a value on his or her services." *Ramos*, 713 F.2d at 555. Additionally, "expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates. . . are part of the reasonable attorney's fee allowed by [Section 1988]." *Downes v. Volkswagen of Am.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (citations and footnote omitted).

**ARGUMENT**

1. Plaintiffs Are Prevailing Parties.

"A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Plaintiffs will not belabor this point because, following the entry of preliminary and permanent injunctions against the Defendant, and a final judgment in Plaintiffs' favor, Defendant cannot possibly argue that Plaintiffs anything other than completely prevail.

A successful civil rights plaintiff "cross[es] the 'statutory threshold' for recovering attorney fees and expenses by coming within Section 1988's definition of a 'prevailing party.'"

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). "Prevail" means "to gain the victory." WEBSTER'S UNABRIDGED DICTIONARY 1426 (2d ed. 1979). Attorney fees and expenses are recovered in cases comprising "the stuff of which legal victories are made." *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001) (citations omitted).

"The touchstone of the prevailing party inquiry. . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n.*, 489 U.S. at 792-793). "[T]he phrase 'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits." H. R. Rep. 1558, supra, at 7. "[P]arties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S. Rep. No. 1011, *supra*, at 5. Accordingly, "[u]nder our generous formulation of the term, plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citations and internal quotation marks omitted). "[A] 'prevailing party' is one who has been awarded some relief by the court. . ." *Buckhannon*, 532 U.S. at 603.

"[T]he Buckhannon Court did not have reason to address how formal a judgment must be." *Citizens for Better Forestry v. United States Dept of Agric.*, 567 F.3d 1128, 1131 (9th Cir. 2009). A declaratory judgment, for example, "will constitute relief, for purposes of Section 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (*per curiam*).

Without question, this Court through its permanent injunction and final judgment ordered a change in the parties' legal relationship, which achieved Plaintiffs' litigation goal. As of March 31, 2014, a new constitutional order respecting a fundamental, enumerated right prevailed throughout the State of New Mexico. Defendant is no longer free to enforce a complete prohibition on the concealed carry of arms for self-defense by lawful resident aliens — by any measure, a judicially-mandated, material alteration in the legal relationship among the parties.

2.	Counsels' Rates Are Well-Established.

"A reasonable hourly rate should reflect the attorney's market rate, defined as 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (citation omitted).

In determining "reasonable hourly rates," the Supreme Court has repeatedly stressed that "attorney's fees awarded under [Section 1988] are to be based on market rates for services rendered." The attorney's actual billing rate for comparable work is "presumptively appropriate" to use as the market rate. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) (citations omitted). When a lawyer establishes a market billing rate, it makes no difference that, in particular cases, the lawyer charges reduced rates to provide assistance for favored or charitable causes. "[L]awyers who donate their services at bargain rates to legal aid organizations may collect under § 1988 the fees they could obtain if the charitable element were removed." *Id*. at 977 (citing *Blum*, *supra*, 465 U.S. 886)). "[T]he lawyer who sacrifices income to assist a favored group of clients" still recovers his or her market rate. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149 (7th Cir. 1993).

If the court is unable to determine the attorney's true billing rate, however (because he maintains a contingent fee or public interest practice, for example), then the court should look to the next best evidence—the rate charged by lawyers in the community of "reasonably comparable skill, experience, and reputation." *Id*. (quoting *Blum*, 465 U.S. at 895 n.1). Although "usually subsumed within the initial lodestar calculation," the court may adjust the rate based on the twelve "*Hensley* factors." *People Who Care*, 90 F.3d at 1310-11 & n.1. In this context,

[T]he term "community" does not necessarily mean the local market area. In circumstances where the "subject matter of the litigation is one where the attorneys practicing it are highly specialized" the community may be the "community of practitioners" in the national market.

*Kaylor-Trent v. John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 884 (C.D.Ill. 2013) (citing *Jeffboat, LLC v. Dir., OWCP*, 553 F.3d 487 (7th Cir. 2009)). An attorney may also establish a market rate "by submitting evidence of fee awards that the applicant has received in similar cases." *Small*, 264 F.3d at 707 (citation omitted). "Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential." *People Who Care*, 90 F.3d at 1313 (citation omitted) (emphasis added).

Courts do not lightly consider the constitutionality of legislative enactments. Civil rights litigation of the sort practiced here is complex, sensitive and specialized work, often handled by experienced litigators. The Second Amendment field itself represents something of a niche. "[T]he subject matter of [this] litigation is one where the attorneys practicing it are highly specialized and the market for legal services in [the] area is a national market." *Jeffboat*, 553 F.3d at 491. While any market might host attorneys handling complex federal litigation, neither in Albuquerque nor in New York City are cases of this type primarily handled by local attorneys.

Counsel submit that the quality of their work, and the result achieved, speak for themselves. But they also respectfully submit evidence as to their qualifications and rates.

David G. Sigale has practiced law for 17 years, and served as co-Plaintiffs' counsel in the landmark U.S. Supreme Court case of *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), and is Plaintiffs' counsel in the precedent-setting *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (overturning Illinois's ban on the public carry of firearms) and *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (overturning Chicago's firing range ban). He has successfully litigated Second Amendment cases across the United States. In addition to his constitutional litigation practice, Sigale litigates such other complex issues as antitrust law, employment discrimination and ERISA. In 2013, he was invited to become a member of the National Trial Lawyers: Top 100. He has been named to the Illinois Super Lawyers list in 2012, 2013, and 2014. Sigale is also a member of the American Inns of Court. He has argued before the Seventh Circuit, and has lectured on the Second Amendment, as well as the newly-enacted Firearms Concealed Carry Act, for groups such as the Illinois Institute for Continued Legal Education (IICLE) and the Chicago Bar Association. Sigale has also lectured on First Amendment issues. Though he employs different fee structures for different types of cases, for constitutional litigation his standard rate of $500.00/hour has twice been agreed upon with governmental entities and approved by the United States District Courts (*Winbigler v. Warren County Housing Authority*, 4:12-CV-4032 (C.D.Ill. 2013) and *Nino de Rivera Lajous v. Sankey*, 4:13-CV-3070 (D.Neb.)). Sigale earned his J.D. from Georgetown University Law Center, and a B .A. from Indiana University- Bloomington.

Paul M. Kienzle, III is a principal of Scott & Kienzle, P.A., in Albuquerque, N.M. He has practiced law for almost twenty-two years, and has handled civil rights litigation before this

Court, including in one case prosecuting a class action. His rate of $275.00/hour is reasonable and the time expended was necessary to the litigation. He and his firm did not bill for the time of his paralegals or legal assistants.

Affidavits of David G. Sigale, Scott M. Kienzle, III, and Robert Jason Bowles are attached in support of this Motion. Also attached are the National Law Journal's 2012 survey results for hourly billing among firm's partners and associates.[1]

Several *Hensley* factors support these rates here, including "the novelty and difficulty of the questions; the skill requisite to perform the legal service properly;" "the results obtained; the experience, reputation, and ability of the attorneys;" "and awards in similar cases." *People Who Care*, 90 F.3 d at 13 10 n. 1.

3. The Hours Expended By Counsel Were Reasonably Necessary to the Result.

Counsel's requested rates are especially reasonable in light of their efficiency. The important results in this Court, and the preparation of this Motion, were achieved mainly by only two attorneys in fewer than 100 total hours. Counsel are confident that this amount of time compares very favorably with that typically expended in this field. It would be difficult to examine this case's requirements, counsels' work product, and the result achieved, and surmise that there is anything excessive about counsel's time — which was kept contemporaneously and in sufficient detail to allow an evaluation of their work. Counsel expected that their time entries would be scrutinized. But as Judge Kessler noted,

> When a lawyer writes, for example, that she spent six or eight hours in one day "researching and drafting" a brief dealing exclusively with issues on which her client has ultimately prevailed, there is certainly no need for her to itemize every case she looked up or every paragraph she labored over. Trial courts must recognize how lawyers work and how they notate their

---

[1] Courts often rely on NLJ surveys for this purpose. *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 780 n.58 (S.D.Tex. 2008) (collecting cases).

time. It must be remembered that the ultimate inquiry is whether the total time claimed is reasonable. *Smith v. District of Columbia*, 466 F.Supp.2d 151, 158 (D.D.C. 2006) (emphasis added).

Plaintiffs reserve the right to supplement their Fee Statements regarding this portion of the litigation, the time expended for which is largely not included in this Motion.

4. <u>Counsel Are Entitled to Recover Litigation Expenses.</u>

The expenses requested here by counsel were plainly necessary to the conduct of this litigation, *Downes*, 41 F.3d at 1144, and are adequately documented.

## CONCLUSION

Wherefore, Plaintiffs respectfully request that their motion be granted.

Dated: April 30, 2014                                          Respectfully submitted,

David G. Sigale, Esq. (#6238103 (IL))         Paul M. Kienzle, III., Esq. (#7592 (NM))
LAW FIRM OF DAVID G. SIGALE, P.C.       SCOTT & KIENZLE, P.A.
739 Roosevelt Road, Suite 304                     P.O. Box 587
Glen Ellyn, IL 60137                                      Albuquerque, NM 87103
630.452.4547                                                  (505) 246-8600
dsigale@sigalelaw.com                                 paul@kienzlelaw.com
Admitted *pro hac vice*

                                                By:        /s/ David G. Sigale
                                                                 David G. Sigale

                                                Attorneys for Plaintiffs

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1. On April 30, 2014, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

2. Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

                                                /s/ David G. Sigale
                                                  David G. Sigale